IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TAMARCUS WILLIAMS,

    Petitioner,                  No. CIV S-08-2218 FCD GGH P

  vs.

KENNETH CLARK,

    Respondent.              FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

       Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2006 conviction for voluntary manslaughter and personal use of a firearm. Petitioner is serving a sentence of 21 years.

       The petition raises one claim: <u>Cunningham</u> error.[1] After carefully reviewing the record, the court recommends that the petition be denied.

/////

/////

---

[1] In the answer, respondent observes that on direct appeal in state court, petitioner raised an additional claim of jury instruction error. Petitioner does not raise that claim in the instant petition.

1

II. <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. <u>Neelley v. Nagle</u>, 138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. <u>Moore v. Calderon</u>, 108 F.3d 261, 263 (9th Cir. 1997).

In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. <u>Id</u>. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. <u>Williams (Terry)</u>, 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams (Terry)</u>, 529 U.S. at 410-11, 120 S. Ct. at

1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

The California Court of Appeal was the last state court to issue a reasoned opinion addressing the claim raised in this action. See Respondent's Exhibits A, C. Accordingly, this court considers whether the denial of petitioner's claim by the California Court of Appeal was an unreasonable application of clearly established Supreme Court authority. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (when reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision).

/////

III. <u>Factual Background</u>

The opinion of the California Court of Appeal contains a factual summary. After independently reviewing the record, the court finds this summary to be accurate and adopts it below:

> On July 14, 2005, appellant shot Reginald Gross, killing him. Appellant claimed he was at one time Gross's friend. Things changed, however, after a May 2005 encounter between Gross and appellant. On that occasion, appellant and his cousin encountered Gross, Gross's brother, and a group of about 15 Samoans on the street in Vallejo. According to appellant, Gross "hung around" with the Samoans. Gross and the Samoans formed a circle around appellant and his cousin and began hitting and kicking them. The incident lasted about three to five minutes, until appellant and his cousin were able to run away.
>
> On one occasion following the May 2005 incident, appellant saw Gross riding a bicycle on the street and told him, "I should beat you up for jumping me." Gross responded, "Next time I see you, I'm going to kill you." On subsequent occasions, Gross visited a house where appellant's children lived, and the pair encountered each other near a 99 Cent Store, where Gross told appellant, "I'll beat your ass, Nigga. I'm going to shoot your house up." After appellant told Gross, "You don't know where I live at," Gross blurted out the address where appellant's mother lived. On July 4, 2005, appellant told a female friend of Gross's that Gross "was gonna git gat." The woman told a friend she feared for her life and for Gross's life because appellant said he was going to kill Gross. Appellant admitted obtaining a gun, a .38 special "snub nose," to protect himself against Gross.
>
> On the date Gross was killed, appellant carried the gun with him to Benicia Road in Vallejo, where he knew he might encounter Gross and his Samoan associates. Appellant met Gross on the street, and the two began fighting while several onlookers watched. A friend of Gross's described the fight as one in which appellant "was getting whooped." During the fight, Gross removed his belt and wrapped it around his hand. According to appellant, Gross used it like a whip, hitting appellant on the shoulder with the buckle end of the belt. FN2 Appellant believed the buckle came within six inches of his face at one point. When it appeared to appellant that Gross was reaching for another weapon, appellant pulled out his gun and shot him in the head from a distance of about five feet. Appellant gave no warning before shooting Gross between the eyes. The shot killed him almost immediately. Appellant claimed he was worried about being hit with the buckle end of Gross's belt, and he was concerned that Gross might be reaching for an even more lethal weapon. Appellant ran from the scene. Gross was unarmed, and according to at least one eyewitness, he did not reach into his pockets before being shot by appellant.
>
> FN2. According to at least one person who witnessed the fight, Gross pulled off his belt but did not get a chance to use it before being shot by appellant.
>
> In a one-count information filed October 24, 2005, the Solano County District Attorney charged appellant with murder, in violation of section 187, subdivision

(a). It was further alleged that appellant had discharged a handgun during the commission of the offense. (§§ 12022.5, subd. (a)(1), 12022.53, subds. (b), (c) & (d).)

Trial was by jury. The jury voted to acquit appellant of first and second degree murder but found him guilty of voluntary manslaughter (§ 192, subd. (a)). The jury also found true the allegation that appellant had personally used a firearm during the commission of the offense (§ 12022.5, subd. (a)(1)).

The trial court imposed a total sentence of 21 years in state prison, composed of the upper term of 11 years for the voluntary manslaughter conviction (§ 192, subd. (a)) with a consecutive upper term of 10 years for the firearm use enhancement (§ 12022.5, subd. (a)(1)). Appellant filed a timely notice of appeal.

Respondent's Exhibit A, pp. 1-3.

IV.  Discussion

Petitioner alleges that the trial court erred by imposing upper terms on the manslaughter convictions and the firearm use enhancement.  The California Court of Appeal denied petitioner's claim for the following reasons:

2. Cunningham error

Appellant contends the trial court erred by imposing the upper terms on the manslaughter conviction and the firearm use enhancement based on facts neither admitted by appellant nor found to be true beyond a reasonable doubt by a jury, relying on Cunningham, supra, 549 U.S. ---- [127 S.Ct. 856].FN7 We conclude there was no error.

FN7. The United States Supreme Court had not yet decided Cunningham when appellant filed his opening brief. Appellant nevertheless raised the issue, anticipating the Cunningham decision and relying on Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. Because Cunningham was decided before the People filed a responsive brief, both the People and appellant have addressed the application of Cunningham to the facts of this case.

In Cunningham, the United States Supreme Court held that California's Determinate Sentencing Law violates a defendant's right to jury trial to the extent it permits a trial court to impose an upper term sentence based on aggravating factors found by the court instead of a jury. ( Cunningham, supra, --- U.S. at pp. ----, ---- - ----, 127 S.Ct. at pp. 860, 868-871.) The Cunningham court expressly disapproved of our Supreme Court's decision in People v. Black (2005) 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 ( Black I ). ( Cunningham, supra, --- U.S. at p. ----, 127 S.Ct. at p. 871.) In light of Cunningham, the United States Supreme Court vacated the judgment in Black I  and remanded the matter to the California Supreme Court. (See Black v. California (2007) --- U.S. ----, 127 S.Ct. 1210, 167 L.Ed.2d 36.) Upon remand, our Supreme Court decided People v. Black (2007) 41 Cal.4th 799, 62 Cal.Rptr.3d 569, 161 P.3d 1130 ( Black II ), in which it held that

5

"imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." FN8 ( Id. at p. 816, 62 Cal.Rptr.3d 569, 161 P.3d 1130, italics added.) In arriving at this conclusion, the court relied in part on the well established rule that "the right to a jury trial does not apply to the fact of a prior conviction," citing United States Supreme Court decisions in Cunningham, supra, --- U.S. at p. ----, 127 S.Ct. at p. 868, Blakely v. Washington, supra, 542 U.S. at p. 301, Apprendi v. New Jersey (2000) 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435, and Almendarez-Torres v. United States (1998) 523 U.S. 224, 243, 118 S.Ct. 1219, 140 L.Ed.2d 350. ( Black II, supra, 41 Cal.4th at p. 818, 62 Cal.Rptr.3d 569, 161 P.3d 1130.) " '[R]ecidivism ... is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.' [Citation.]" ( Ibid.)

FN8. The California Supreme Court has also made clear that where, as here, a defendant was sentenced when Black I was still the law ( Black I was decided on June 20, 2005; appellant was sentenced on June 27, 2006), no forfeiture occurs based on failure to raise the issue in the trial court. ( People v. Sandoval (2007) 41 Cal.4th 825, 837, fn. 4, 62 Cal.Rptr.3d 588, 161 P.3d 1146.) Accordingly, we reject the People's contention that appellant forfeited his claim of error by failing to object in the trial court.

Here, the trial court cited the following five aggravating factors in support of imposing the upper term: (1) the offense was particularly vicious and callous; (2) the manner in which the crime was carried out indicated some planning; (3) appellant had engaged in violent conduct indicating a serious danger to society; (4) appellant's prior sustained petitions as a juvenile in delinquency proceedings were numerous and of increasing seriousness; and (5) appellant's prior performance on juvenile probation and parole was unsatisfactory. The court described appellant's history in juvenile delinquency proceedings as "remarkable," starting with a sustained petition for first degree residential burglary and followed by sustained petitions for multiple counts of residential burglary, violations of court orders, and receiving stolen property, among others.

The trial court's imposition of upper terms for the manslaughter conviction and the firearm use enhancement did not infringe upon appellant's constitutional right to jury trial under Cunningham. Where, as here, at least one legally sufficient aggravating circumstance is justified based upon a defendant's history of recidivism, the trial court is authorized to impose the upper term. ( Black II, supra, 41 Cal.4th at p. 816, 62 Cal.Rptr.3d 569, 161 P.3d 1130.) The trial court's reliance on appellant's prior juvenile adjudications supports the imposition of the upper terms.

Appellant argues that his prior juvenile adjudications are not equivalent to prior "convictions" and thus cannot provide the basis for imposing an upper term sentence. He relies on United States v. Tighe (9th Cir.2001) 266 F.3d 1187, 1192-1195 ( Tighe ), in which a divided panel of the Ninth Circuit Court of Appeals held that the "prior conviction" exception to the general rule requiring jury determination of aggravating sentencing factors does not extend to nonjury juvenile adjudications. The majority in Tighe reasoned that prior convictions

constitute a constitutionally permissible sentencing factor only because they satisfy the "fundamental triumvirate of procedural protections intended to guarantee the reliability of criminal convictions: fair notice, reasonable doubt and the right to a jury trial." ( Id. at p. 1193.) According to the Tighe majority, juvenile adjudications that do not afford the right to jury trial or require proof beyond a reasonable doubt do not fall within the prior conviction exception.FN9 ( Id. at p. 1194.)

FN9. The Tighe court's concern about juvenile adjudications requiring proof less than a reasonable doubt has no application to California juvenile adjudications. Under California law, a minor may be adjudged a ward of the court only upon proof beyond a reasonable doubt. (Welf. & Inst.Code, §§ 602, 701.)

We are not obliged to follow the reasoning of Tighe, which has been rejected by every other federal appellate court that has considered the matter. ( People v. Williams (1997) 16 Cal.4th 153, 190, 66 Cal.Rptr.2d 123, 940 P.2d 710 [decisions of lower federal courts interpreting federal law not binding on state courts].) After the Ninth Circuit filed its decision in Tighe, its reasoning was rejected in unanimous decisions of the Eighth Circuit in United States v. Smalley (8th Cir.2002) 294 F.3d 1030, 1032, the Third Circuit in United States v. Jones (3d Cir.2003) 332 F.3d 688, 696, and the Eleventh Circuit in United States v. Burge (2005) 407 F.3d 1183, 1190. Likewise, with one exception, California appellate courts have declined to follow Tighe.FN10 (See People v. Tu (Aug. 27, 2007, A105905) 154 Cal.App.4th 735 [2007 Cal.App. Lexis 1409, at p.*22, 2007 WL 2411707]; People v. Buchanan (2006) 143 Cal.App.4th 139, 149, 49 Cal.Rptr.3d 137; People v. Palmer (2006) 142 Cal.App.4th 724, 733, 47 Cal.Rptr.3d 864; People v. Smith (2003) 110 Cal.App.4th 1072, 1075, 1 Cal.Rptr.3d 901; People v. Lee (2003) 111 Cal.App.4th 1310, 1312-1316, 4 Cal.Rptr.3d 642; People v. Superior Court (Andrades) (2003) 113 Cal.App.4th 817, 830-834, 7 Cal.Rptr.3d 74, People v. Bowden (2002) 102 Cal.App.4th 387, 390, 125 Cal.Rptr.2d 513; but see People v. Nguyen (2007) 152 Cal.App.4th 1205, 1224-1226, 62 Cal.Rptr.3d 255.)

FN10. The reported California decisions that have addressed the issue arise primarily in the context of whether it is proper to treat a juvenile adjudication as a strike under the Three Strikes Law.

In People v. Tu, supra, the appellate court addressed the very issue presented here, holding that a sentencing court may enhance an adult offender's sentence on the basis of prior juvenile adjudications without violating the offender's constitutional right to jury trial. ( People v. Tu, supra, 154 Cal.App.4th at p. ---- [2007 Cal.App. Lexis 1409, at p.*26, 2007 WL 2411707].) The court concluded that "[t]he panoply of rights and protections extended to juveniles in this state infuse sufficient reliability into the juvenile adjudicative process to satisfy Apprendi ...." ( Id. at ---- [2007 Cal.App. Lexis 1409, at p.*22, 2007 WL 2411707].)

We agree with the analysis in Tu. The procedural rights afforded in a juvenile court proceeding suffice to ensure the reliability of a juvenile adjudication, and the lack of a jury trial does not undermine that reliability in any significant way.FN11 (See People v. Palmer, supra, 142 Cal.App.4th at p. 732, 47 Cal.Rptr.3d 864.) Accordingly, the trial court's finding that appellant's prior sustained petitions in

7

> juvenile delinquency proceedings were numerous and of increasing seriousness was sufficient, in and of itself, to justify imposition of the upper terms for the manslaughter conviction and the associated firearm use enhancement.
>
> FN11. Indeed, the United States Supreme Court has stated that "[t]he imposition of the jury trial on the juvenile court system would not strengthen greatly, if at all, the fact-finding function." ( McKeiver v. Pennsylvania (1971) 403 U.S. 528, 547, 91 S.Ct. 1976, 29 L.Ed.2d 647.)

Respondent's Exhibit A, pp. 7-10.

The trial court imposed the upper term for manslaughter and the firearm enhancement based on the following factors: 1) the shooting was vicious and callous; 2) the crime involved planning; 3) petitioner engaged in violent conduct indicating that he is a danger to society; 4) petitioner had numerous prior juvenile convictions which were of increasing seriousness; 5) unsatisfactory performance on juvenile probation. Respondent's Exhibit D, volume 2, pp. 621-623. The trial court listed petitioner's prior juvenile convictions:

> This defendant's juvenile criminal history is remarkable in the amount of strikes that he has sustained as a juvenile, starting in 1999 with a first degree residential burglary, proceeding again with, excuse me, I take that back; I misspoke.
>
> 1997, first degree residential burglary, then picking up a 211 robbery, then picking up four more counts of residential burglary which were Harvey waived; picking up another residential burglary and a gun use, several violations of Court orders, another 496, and a residential burglary.
>
> A final submission to CYA, a parole from CYA, a revocation from CYA, and ultimately, a dishonorable discharge from CYA in November of '04.
>
> Picked up a misdemeanor in '04. Now that he is an adult, been out, then he picked up this case, which has resulted in a sentencing today.

Id., pp. 622-623.

In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), the United States Supreme Court held as a matter of constitutional law that, other than the fact of a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 520 U.S. at 490, 120 S.Ct. 2348. In Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004), the Supreme

8

Court held that the "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303, 124 S.Ct. 2531.

In People v. Black, 35 Cal.4th 1238 (2005) ("Black I"), the California Supreme Court held that California's statutory scheme providing for the imposition of an upper term sentence did not violate the constitutional principles set forth in Apprendi and Blakely. The Black I court reasoned that the discretion afforded to a sentencing judge in choosing a lower, middle or upper term rendered the upper term under California law the "statutory maximum." Black I, 35 Cal.4th at 1257-61.

In Cunningham, supra, the United States Supreme Court held that a California judge's imposition of an upper term sentence based on facts found by the judge (other than the fact of a prior conviction) violated the constitutional principles set forth in Apprendi and Blakely. Cunningham expressly disapproved the holding and the reasoning of Black I, finding that the middle term in California's determinate sentencing law was the relevant statutory maximum for purposes of applying Blakely and Apprendi. Cunningham, 549 U.S. at 291-294, 127 S.Ct. 856.

In light of Cunningham, the Supreme Court vacated Black I and remanded the case to the California Supreme Court for further consideration. Black v. California, 549 U.S. 1190, 127 S.Ct. 1210 (2007). On remand, the California Supreme Court held that "so long as a defendant is eligible for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury." People v. Black, 41 Cal.4th 799, 813 (2007) (Black II). In other words, as long as one aggravating circumstance has been established in a constitutional manner, a defendant's upper term sentence withstands Sixth Amendment challenge.

Relying on Black II, the Ninth Circuit recently confirmed that, under California law, only one aggravating factor is necessary to authorize an upper term sentence. Butler v. Curry, 528 F.3d 624, 641-43 (9th Cir.), cert. denied, --- U.S. ----, 129 S.Ct. 767 (2008).

In the instant case, the trial court stated that it was imposing the upper sentence, in part, because petitioner's prior juvenile convictions were numerous. Cal. Rules of Court 4.421(b)(2) provides that a numerous convictions may justify an upper term: "[t]he defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness." Reliance on prior convictions as a sentencing enhancing factor does not run afoul of Apprendi et al, in that such prior convictions need not be proven to a jury. Apprendi, 530 U.S. 490, 120 S.Ct. 2362-63.

Because the upper term sentences were based, in part, on the fact of petitioner's numerous prior convictions, the trial court did not violate petitioner's Sixth Amendment rights by imposing the upper term sentence.[2] Butler, supra; Cunningham, supra.

Petitioner also argues that the trial court improperly used his juvenile convictions to impose the upper term sentences. In United States v. Tighe, 266 F.3d 1187, 1194 (9th Cir. 2001), the Ninth Circuit held that the Apprendi "prior conviction" exception encompasses only those proceedings that provide a defendant with the procedural safeguards of a jury trial and of proof beyond a reasonable doubt. As a result, the Tighe court declined "to extend Apprendi's 'prior conviction' exception to include prior nonjury juvenile adjudications." Id.

Since deciding Tighe, the Ninth Circuit has recognized that both California courts and other federal circuit courts of appeal disagree with its holding in Tighe, supra. See Boyd v. Newland, 467 F.3d 1139, 1152 (9th Cir. 2006). Thus, while Tighe remains good law in the Ninth Circuit, "the opinion does not represent clearly established federal law 'as determined by the Supreme Court of the United States.'" Boyd, 467 F.3d at 1152 (quoting 28 U.S.C. §

---

[2] Petitioner does not contend that the trial court incorrectly found that he had numerous prior convictions.

2254(d)(1)).  Therefore, the California Court of Appeal did not unreasonably apply clearly established federal law by concluding that the trial court properly considered petitioner's juvenile convictions when it sentenced petitioner.  This claim does not merit federal habeas relief.

Because the denial of petitioner's claims by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority, the petition should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 10/02/09

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

will2218.157